RAYMOND P. BOUCHER [CA SBN 115364]
  *ray@boucher.la*
HERMEZ MORENO [CA SBN 72009]
  *moreno@boucher.la*
BRIAN BUSH [CA SBN 294713]
  *bush@boucher.la*
**BOUCHER, LLP**
21600 Oxnard Street, Suite 600
Woodland Hills, California  91367
Tel:   (818) 340-5400
Fax:  (818) 340-5401

JASON K. FELDMAN [CA SBN 213386]
  *jason@feldmanwallach.com*
IAN WALLACH [CA SBN 237849]
  *ian@feldmanwallach.com*
**FELDMAN & WALLACH**
606 Venice Boulevard, Suite C
Venice, CA   90291
Tel:  (310) 577-2201
Fax: (310) 564-2004

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROBERT PICKETT, AN INDIVIDUAL; DARRYL LEWIS, AN INDIVIDUAL, <br><br> PLAINTIFFS, <br><br> V. <br><br> MIKE BOLLIGER, AN INDIVIDUAL; NAVID KHANSARI, AN INDIVIDUAL; JOE LISARDI, AN INDIVIDUAL; MICHAEL HAN, AN INDIVIDUAL; JACK ARANDA, AN INDIVIDUAL; CITY OF INGLEWOOD, A PUBLIC ENTITY; AND DOES 1 THROUGH 10, INCLUSIVE, <br><br> DEFENDANTS. | Case No. 2:14-cv-09366 <br><br> **COMPLAINT FOR DAMAGES:** <br><br> **CIVIL RIGHTS VIOLATIONS PURSUANT TO 42 U.S.C. §1983** <br><br> **1.** Unreasonable and Excessive Use of Force; <br> **2.** False Arrest and Malicious Prosecution; <br> **3.** Failure to Intervene; <br> **4.** *Monell* Liability: Failure to Train, Supervise and Discipline <br><br> **STATE CLAIMS** <br><br> **5.** Intentional Infliction of Emotional Distress <br> **6.** Battery <br> **7.** False Arrest-Imprisonment <br> **8.** Negligence <br><br> **DEMAND FOR JURY TRIAL** |

1

**COMPLAINT**

Plaintiffs Robert Pickett, an individual, and Darryl Lewis, an individual ("Plaintiffs"), hereby demand a trial by jury and complain and allege the following against defendants Mike Bolliger, an individual, Navid Khansari, an individual, Joe Lisardi, an individual, Michael Han, an individual, Jack Aranda, an individual, the City of Inglewood, a public entity, and DOES 1 through 10, inclusive, on information and belief except for information identified as being based on personal knowledge, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery:

**VENUE AND JURISDICTION**

1.      This action is brought pursuant to 42 U.S.C. §§ 1983 *et seq*., and the Fourth and Fourteenth Amendments to the United States Constitution.  Subject matter jurisdiction is premised on 29 U.S.C. §§ 1331 and 1343(a)(1), (2), (3), and (4), and the aforementioned statutory and Constitutional provisions.

2.      Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because the events, injuries, and violations of rights alleged herein occurred within the City of Inglewood, County of Los Angeles, California, which is within this district and because the defendants, or some of them, reside within the jurisdictional boundaries of this Court.

**THE PARTIES**

3.      Both Plaintiffs are residents of the County of Los Angeles. Plaintiff Robert Pickett is an individual residing in the City of Los Angeles, County of Los Angeles, State of California. Plaintiff Darryl Lewis is an individual residing in the City of Gardena, County of Los Angeles, State of California.

4.      At all times herein mentioned, defendant City of Inglewood was a public entity duly organized and existing under and by virtue of the laws of the State of California.

COMPLAINT FOR DAMAGES

5.     At all times herein mentioned, Plaintiffs are informed and believes and thereon alleges that individual defendants Mike Bolliger, Navid Khansari, Joe Lisardi, Michael Han, Jack Aranda, and DOE Defendants 1 through 7 (hereinafter collectively referred to as Defendant Police Officers), were residents of the County of Los Angeles and were police officers, sergeants, detectives, and/or civilian employees, agents and/or representatives of the City of Inglewood Police Department ("IPD"),  and were employees and agents of defendant City of Inglewood. At all times relevant hereto, said defendants were acting within the course and scope of their employment as police officers, sergeants, detectives, and/or civilian employees of the IPD, a department and subdivision of defendant City of Inglewood that is located at One Manchester Boulevard, Inglewood, CA 90301. At all times relevant herein, said defendants were acting under color of law, under the color of statutes, ordinances, regulations, policies, customs, practices and usages of defendant City of Inglewood, its police department and/or the State of California.

6.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOE defendants 1 through 10, inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when same shall have been ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that the respective injuries of each Plaintiff as herein alleged were proximately caused by the acts and/or omissions of said fictitiously named defendants.

7.     At all times relevant hereto, Defendant Police Officers employed organized, unlawful and illegal customs and practices of excessive force, making false arrests, falsifying evidence, and intentionally causing emotional distress upon innocent victims. Said misconduct was known, encouraged, tolerated and/or condoned by Defendant City of Inglewood.

COMPLAINT FOR DAMAGES

8.     At all times relevant herein, Defendant Police Officers were acting within the course and scope of their employment as police officers and employees of the City of Inglewood, which is liable under the principles of *respondeat superior* for said employees' tortious conduct pursuant to California Government Code section 815.2.

## FACTS COMMON TO ALL CAUSES OF ACTION

9.     Plaintiff Robert Pickett was born on July 4, 1980 in Los Angeles, California. He has a son with his first wife and is currently engaged. Mr. Pickett worked as a handyman for several years prior to May 24, 2011. He lived at 600 Venice Way, Unit 6, Inglewood, California.

10.     Plaintiff Darryl Lewis was born July 18, 1976 in Harbor City, California.  He is married to Billy Jean Lewis and has four children. His youngest child is five years old.

11.     On May 23, 2011, Pickett went to his friend's house in Inglewood to have dinner and watch a game. They barbecued hamburgers and watched a game on TV. Mr. Pickett did not have a ride home, so Mr. Lewis offered to take him back to his place and to pick up dumbbells he had left there.

12.     At about 12:45 a.m. on May 24, 2011, defendant Bolliger, a Sergeant with the IPD, responded to an anonymous telephone call of a burglary in progress at an apartment complex at 600 Venice Way, City of Inglewood. While *en route*, the call was upgraded to a home invasion robbery. The only description given of the possible suspects was that they were two male Blacks, possibly armed with handguns. No further information or description was provided.

13.     Armed with this sketchy information, Bolliger proceeded to the location alone, with no partner and with no backup.

14.     Just before Bolliger's arrival, Plaintiffs had driven to Plaintiff Pickett's apartment at 600 Venice Way.  When they arrived, they each went through the metal security door which required Plaintiff Pickett to use his pass

COMPLAINT FOR DAMAGES

1   code. Plaintiff Pickett told Plaintiff Lewis that he wanted to stop into his cousin's
2   apartment next door to check in on him. Plaintiff Lewis stayed near the front gate
3   of the complex smoking a cigarette while Pickett turned to go see his cousin at the
4   next door complex.

5        15.    At this precise moment, defendant Bolliger parked his car at the
6   corner, got out armed with his shotgun cocked, loaded and ready to fire. Without
7   warning, without investigation, without knowledge of who was in the area, of who
8   the suspects were or what they looked like, and, in violation of all training and
9   standard police protocol, approached the apartment gate and immediately shot Mr.
10  Lewis and Mr. Pickett.

11       16.    No questions asked, no weapons seen, no words offered or exchanged.
12  Defendant Bolliger blasted three shotgun rounds at the hapless and unarmed
13  Plaintiffs, striking them and wounding them as they sought to take cover from
14  assault, leaving them in critical condition, bleeding face down on the ground.

15       17.    At no time prior to the deadly assault did Defendant Bolliger warn,
16  communicate with or announce his office or presence in any way, shape or form to
17  Plaintiffs.

18       18.    Plaintiff Pickett sustained 7 gunshot wounds including one to his
19  head. Plaintiff Lewis sustained 4 gunshot wounds, one to his back and three to his
20  legs.

21       19.    Defendants Navid Khansari and Joe Lisardi, while responding to the
22  scene, heard the gunshots. Upon arriving, they saw both Plaintiffs on the ground
23  though in critical condition. Defendant Khansari proceeded to handcuff each of
24  them.

25       20.    It immediately became apparent that the wrong men had been shot as
26  a result of Bolliger's rash, reckless and life endangering conduct. Instead of
27  proceeding to investigate the burglary/home invasion, said Defendants set out to
28  cover up the shooting of these two innocent, unarmed men by Bolliger.

COMPLAINT FOR DAMAGES

21.    Because Bolliger radioed he had been involved in a shooting, other members of the IPD rushed to the scene, believing Bolliger had been the victim of an attempted shooting.  While driving with reckless abandon to the scene, they ran over a pedestrian, in a cross walk, killing her.

22.    When Defendant Police Officers eventually arrived at the apartment unit where the robbery had allegedly occurred, none of the alleged victims could identify either Plaintiff as the perpetrator who, just hours before, was supposed to have entered their apartment, held them at gun point, robbed them of personal items, forced them to sit and eventually forced them into the bathroom.

23.    The suspects that these "victims" described to Defendant Police Officers by physical description, did not even approximate Plaintiffs' descriptions. The clothing worn by Plaintiffs did not match the description given by the victims.

24.    To now justify the shooting, defendant Bolliger had to contrive a story that Plaintiffs had pointed a gun at him.  The problem for defendant Bolliger and the rest of Defendant Police Officers was that neither Plaintiff was armed; neither possessed a weapon of any kind. Likewise, neither Plaintiff was in possession of any of the stolen items supposedly taken by the suspect in the robbery.

25.    Initial photographs of the scene where Plaintiffs were shot, do not show any weapon nor any of the stolen items. Some of the responding officers to the scene failed to see any weapons purportedly belonging to either Plaintiff. Somehow, however, two handguns appeared and stolen items appeared as well.  It was determined by subsequent forensic analysis before Plaintiffs' criminal trial, that neither Plaintiff was in any way connected physically with the weapons or the items.

26.    As Plaintiffs laid on the cement floor, bleeding, wounded and in critical condition, Bolliger told plaintiff Picket that he did not give a f*** [expletive] that he had shot him in the head. Bolliger resisted calling for an ambulance and argued with a witness when he would not call for 911. When

COMPLAINT FOR DAMAGES

1   paramedics arrived, defendant Bolliger refused to let them tend to the critically
2   wounded Plaintiffs. Mr. Pickett and Mr. Lewis lay on the ground, in excruciating
3   pain, believing they were going to die.

4        27.   It took nearly an hour before Plaintiffs were tended to medically.

5        28.   During and after the time Plaintiffs were eventually tended to by
6   medical personnel, Defendant Bolliger, Defendant Police Officers and DOE
7   Defendants 1-7, then began a concerted effort to materially alter the crime scene, to
8   plant evidence (all in violation of law) to disturb the "crime scene," (contrary to
9   accepted police practices and IPD training and policies), and to stage and
10  manipulate the crime scene so as to comport to the hastily agreed-upon position
11  among said defendants, that Plaintiffs were the robbers, that they were armed and
12  that they had pointed their weapons at Defendant Bolliger, thus justifying his
13  shooting of them.

14       29.   Defendant Police Officers then caused Plaintiffs to be arrested on
15  false charges despite their knowledge that Plaintiffs had no connection to the
16  alleged crime and to cover-up the unjustified and unwarranted shooting of them. At
17  the hospital, therefor, Plaintiffs were arrested on a number of these false charges
18  and were told they were being charged with murder, i.e., for the death of the
19  pedestrian! They were further arrested for the attempted murder of Bolliger and for
20  carrying a loaded firearm.

21       30.   Defendant Police Officers thereafter conducted tainted six-pack
22  lineups in an effort to get the purported robbery victims to identify Plaintiffs. They
23  failed and refused to conduct an investigation as to the real robbers, focusing
24  instead solely on their efforts to pin the crimes on Plaintiffs.

25       31.   Defendant Police Officers then provided false testimony and
26  generated knowingly false reports in an attempt to justify the wrongful shooting of
27  Plaintiffs by Bolliger, despite knowledge that Plaintiffs did nothing to justify nor
28  warrant the use of the deadly force on their persons by Defendant Bolliger.

COMPLAINT FOR DAMAGES

32.     With the knowledge that they were perpetrating a fraud on the judicial system, with knowledge that Plaintiffs were not guilty of any crime, with knowledge that they had altered, manipulated and staged the crime scene, including the planting of evidence, in a continued effort to promote their attempts to conceal the truth about Bolliger's unwarranted and "bad" shootings, they presented their reports to the District Attorney, knowing they would be believed despite their falsity, simply because they were law enforcement personnel and Plaintiffs were two Black men and knowing that criminal charges would therefore follow. These false reports were designed to mislead the prosecutor's office into relying on the Defendants' ostensible credibility and to thereby file false charges against plaintiffs. As a result, the District Attorney's Office relied solely on the reports and indeed did file criminal charges against Plaintiffs and proceeded to prosecute them,

33.     Plaintiffs' lives and freedom were taken and placed in severe jeopardy by the wrongful conduct of these Defendant Police Officers. If convicted of these false charges, each Plaintiff faced *decades* of incarceration in State prison. Moreover, during the nearly full year of pre-trial incarceration, Plaintiffs Pickett and Lewis were subjected to inhumane conditions in Men's Central Jail in Los Angeles. While there, Plaintiffs Pickett and Lewis were forced to purchase "shower shoes" that were mandated to be worn in the showers because of the fungus in the showers. The toilets and plumbing were cracked, and Plaintiffs Pickett and Lewis had to use towels and other napkins to keep feces from pouring onto the floors of the overcrowded cells. The United States Department of Justice, in a memo of June 4, 2014, described Men's Central Jail as follows -- "Living conditions in general are deficient (dimly lit, vermin-infested, noisy, unsanitary, cramped and crowded)." A report by the American Civil Liberties Union titled "Annual Report on Conditions Inside Los Angeles County Jail 2008-2009," at page 2, states "Unsanitary and downright hazardous living conditions within the

8

Men's Central Jail, where prisoners are housed in windowless cells and dorms plagued by poor ventilation, plumbing leakages and stoppages, and extreme temperatures, are also examined in this report. Many detainees report that their shower times are frequently cut short or skipped altogether for unspecified reasons. In addition, the space provided per prisoner in the jail falls shockingly short of nationally recognized standards. Some dormitories contain more than 140 prisoners, with tiered bunk beds that are jammed so closely together that it's almost impossible to move between the rows of beds."

34.   The complete failure of said Defendant Bolliger to comport his conduct to and comply with his training, resulted in and caused him to shoot Plaintiffs with no reason or justification, thereby causing each of them catastrophic and permanent injuries to their body and psyche.

35.   Plaintiffs are informed and believe and thereon allege, that Bolliger perjured himself at the Preliminary Hearing and that the Defendant Police Officers who testified at the criminal tried, did so too.

36.   The matter was set for trial. On December 6, 2013, Plaintiffs were exonerated by a jury of their peers, good and true, after a full presentation by their respective counsel of the above misconduct and falsehoods of Defendant Police Officers. Nonetheless, Plaintiffs were incarcerated from the date they were wrongfully shot by Bolliger on May 24, 2011 and served hard time in County Jail awaiting trial and through the date of their exoneration.

37.   While unarmed and doing nothing illegal, Robert Pickett was shot with a shotgun by an Inglewood Police Department sergeant, sustaining trauma from multiple gunshots to this left upper arm, and a gunshot to his left elbow, the back of this left arm, the left thigh, the right leg through the back of the thigh just above the knee, and his forehead. Mr. Pickett still suffers severe migraines and headaches to this day. Mr. Pickett was confined to a wheelchair for eight months after the shooting and while serving time in County Jail and still experiences

COMPLAINT FOR DAMAGES

constant numbness and tingling in his legs. He also sustained neurological damage and deteriorating hearing and vision loss as a result of the officer shooting, as well as the following damages: worry, anguish, humiliation, physical distress, inconvenience, emotional distress, mental anguish, pain and suffering, loss wages and earning capacity, loss of bodily and neurological functioning.

38.     While unarmed and doing nothing illegal, Darryl Lewis was shot four times with a shotgun by an Inglewood Police Department Sergeant, sustaining trauma from gunshot wounds to his buttocks area, both thighs, and the back of his knees. Mr. Lewis was confined to a wheelchair for nearly twelve months while serving time in County Jail after the shooting and still experiences constant numbness and tingling in his legs. At one point his right leg lost all feeling and doctors were considering an amputation. He also sustained neurological damage as a result of the officer shooting as well as the following damages: worry, anguish, humiliation, physical distress, inconvenience, emotional distress, mental anguish, pain and suffering, loss wages and earning capacity, loss of bodily and neurological functioning. While incarcerated, Darryl lost out on two and a half years of his five year old son's life.

39.     Defendant City of Inglewood is liable under the principles of *respondeat superior* for the state law claims presented herein pursuant to Section 815.2 of the California Government Code for the acts of its employees named herein who at all times alleged were acting in the course and scope of their employment.

40.     With respect to the state law claims that are presented herein, on April 25, 2015, *within 4 months* of their exoneration, each Plaintiff timely filed a tort claim with the City of Inglewood. On May 2, 2014, the City informed Plaintiffs that it was "returning" the Claims because they were not presented "within 6 months.)  Of importance to this erroneous return by the City, it utterly failed to inform Plaintiffs of the deadline for the filing of a civil complaint making, by law,

COMPLAINT FOR DAMAGES

the statute to file a complaint in this case, two years. This filing is, therefore, legally, factually and mathematically, timely.

41.    Each Plaintiff was required to hire attorneys to vindicate his rights and is entitled to attorney's fees pursuant to 42 U.S.C. §1988.

## FIRST CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS: EXCESSIVE USE OF FORCE

### *(Each Plaintiff As against Defendant BOLLIGER)*

42.    Plaintiffs hereby reallege and incorporate by this reference the allegations contained in all paragraphs above as though fully set forth herein.

43.    This action is brought pursuant to 42 U.S.C. Section 1983, and the Fourth Amendment to the United States Constitution.

44.    At all times relevant hereto, Plaintiffs each possessed the right, guaranteed by the Fourth Amendment to the United States Constitution, to be free from unreasonable searches, seizures, and uses of force by police officers acting under the color of law.

45.    As described herein above, Defendant Bolliger violated Plaintiffs' Fourth Amendment rights by unlawfully and unreasonably using excessive force in shooting each Plaintiff without any cause or legal justification, and by unlawfully and unreasonably detaining, handcuffing, arresting, and imprisoning Plaintiffs without reasonable suspicion or probable cause, and by subjecting Plaintiffs to unlawful threats, coercive conduct and intimidation during the course of his treatment of them.

46.    In performing the aforementioned acts, said defendant, acted specifically with the intent to deprive each Plaintiff of his Constitutional rights under the Fourth Amendment to be free from unreasonable seizures and unreasonable use of force, rights of which as a police officer, he was fully aware.

47.    Said Defendant subjected each Plaintiff to the aforementioned deprivations with either actual malice, deliberate indifference or a reckless

1    disregard of his rights under the United States Constitution.

2        48.   As a direct and proximate result of the aforementioned acts of said

3    Defendant, Plaintiff Lewis suffered the violation of his Constitutional rights as

4    described above. Plaintiff has sustained severe and permanent physical, emotional

5    and psychological injuries, which have caused him to seek the care of hospitals,

6    physicians, surgeons, and other professional medical personnel. The amount of

7    damages suffered by Plaintiff will be subject to proof at the time of trial, and

8    exceeds the jurisdictional amount of this Court.

9        49.   As a direct and proximate result of the aforementioned acts of said

10   Defendant, Plaintiff Pickett suffered the violation of his Constitutional rights as

11   described above. Plaintiff has sustained severe and permanent physical, emotional

12   and psychological injuries, which have caused him to seek the care of hospitals,

13   physicians, surgeons, and other professional medical personnel. The amount of

14   damages suffered by Plaintiff will be subject to proof at the time of trial, and

15   exceeds the jurisdictional amount of this Court.

16       50.   The aforementioned acts of said individual defendant were willful,

17   wanton, malicious, and oppressive, thereby justifying the awarding of exemplary

18   and punitive damages as to said individual Defendant.

19   **SECOND CAUSE OF ACTION**

20   **VIOLATION OF CIVIL RIGHTS: FALSE ARREST**

21   ***(Each Plaintiff As against Defendants BOLLIGER, NAVID KHANSARI,***

22   ***JOE LISARDI, MICHAEL HAN, JACK ARANDA***

23   ***and DOE DEFENDANTS 1-7)***

24       51.   Plaintiffs hereby reallege and incorporate by this reference the

25   allegations contained in all paragraphs above as though fully set forth herein.

26       52.   This action is brought pursuant to 42 U.S.C. Section 1983, and the

27   Fourth Amendment to the United States Constitution.

28       53.   At all times relevant hereto, Plaintiffs each possessed the right,

COMPLAINT FOR DAMAGES

guaranteed by the Fourth Amendment to the United States Constitution, to be free from unreasonable searches, seizures, or arrests by police officers acting under the color of law.

54.    As described herein above, each Defendant Police Officer and DOES 1-7 violated Plaintiffs' Fourth Amendment rights by unlawfully and unreasonably detaining, handcuffing, arresting, and imprisoning Plaintiffs without reasonable suspicion or probable cause, and by subjecting Plaintiffs to unlawful threats, coercive conduct  and intimidation during the course of their treatment of them. As alleged, the arrests were in fact made pursuant to a concerted agreement and effort of all said Defendant Police Officers, to fabricate probable cause, to destroy and alter exculpatory evidence, so as to pin false charges on Plaintiffs and to thus subjected to the false arrests in violation of the proscriptions of the Fourth Amendment to the United States Constitution, solely to justify Defendant Bolliger's wrongful conduct.

55.    In performing the aforementioned acts, said defendants, acted specifically with the intent to deprive each Plaintiff of his Constitutional rights under the Fourth Amendment to be free from unreasonable arrests and seizures, rights of which as a police officer, each said Defendant was fully aware.

56.    Said Defendant subjected each Plaintiff to the aforementioned deprivations with either actual malice, deliberate indifference or a reckless disregard of his rights under the United States Constitution.

57.    As a direct and proximate result of the aforementioned acts of said Defendants, Plaintiff Lewis suffered the violation of his Constitutional rights as described above. Plaintiff has sustained severe and permanent physical, emotional and psychological injuries, which have caused him to seek the care of hospitals, physicians, surgeons, and other professional medical personnel. The amount of damages suffered by Plaintiff will be subject to proof at the time of trial, and exceeds the jurisdictional amount of this Court.

COMPLAINT FOR DAMAGES

58.     As a direct and proximate result of the aforementioned acts of said Defendants, Plaintiff Pickett suffered the violation of his Constitutional rights as described above. Plaintiff has sustained severe and permanent physical, emotional and psychological injuries, which have caused him to seek the care of hospitals, physicians, surgeons, and other professional medical personnel.

59.     Each Plaintiff was required to attempt to survive in County Jail with the debilities caused by the massive bullet wounds.  For nearly 8 months of his incarceration, Plaintiff Pickett had to endure trying to survive in County Jail while in a wheelchair. The amount of damages suffered by Plaintiff will be subject to proof at the time of trial, and exceeds the jurisdictional amount of this Court.

60.     The aforementioned acts of said individual defendant were willful, wanton, malicious, and oppressive, thereby justifying the awarding of exemplary and punitive damages as to said individual Defendant.

### THIRD CAUSE OF ACTION
### FAILURE TO INTERVENE TO PREVENT
### VIOLATION OF CIVIL RIGHTS
*(Each Plaintiff As against Defendants, MICHAEL HAN,*
*JACK ARANDA and DOE DEFENDANTS 1 through 7)*

61.     Plaintiffs hereby reallege and incorporate by this reference the allegations contained in all paragraphs above as though fully set forth herein.

62.     This action is brought pursuant to 42 U.S.C. Section 1983, and the Fourth Amendment to the United States Constitution.

63.     At all times relevant herein during all the acts, conduct, failures and omissions relevant to Plaintiffs' mistreatment, injury and need for medical care and treatment and during the conduct of the Defendant Police Officers who engaged in the altering and manipulation the of scene as alleged,  Defendants Michael Han, Jack Aranda and DOE Defendants 1 through 7 were present at said times and places as alleged and were charged with the Constitutional duties of the protection

14

of Plaintiffs and their rights, and each was charged with the duty to not knowingly nor with wanton disregard, allow, permit or fail to intervene in the wrongful and illegal acts of the other defendant police officers at the scene and thereafter when they knew or should have known, that criminal efforts by said defendant police officers, were being taken solely to cover up a bad shooting by Bolliger.

64.    On said dates, times and locations as alleged above, each said Defendant herein was in the position and authority to lawfully intervene in and prevent the unjustified and unwarranted conduct toward Plaintiffs which ultimately led to their respective false arrests, charges and prosecutions.

65.    On said dates, times and locations as alleged above, each said Defendant had ample and reasonably sufficient time and opportunity to so intervene and prevent the wrongful conduct of the other officers, to prevent the violations against Plaintiffs and to timely intercede and was compelled to do so as a sworn Police Officer under the laws of the State of California and under the Constitution of the United States of America.

66.    On said dates, times and locations as alleged above, in deliberate indifference to the life, rights, safety and welfare of Plaintiffs, each said Defendant intentionally and with deliberate indifference to the civil rights of Plaintiff, refrained from intervening in the acts leading to Plaintiffs" false arrest, charges and prosecutions and thereafter refrained from intervening to so that could Plaintiffs would not be so subjected.

67.    As a result thereof, Plaintiffs, as alleged were unjustifiably, purposely, recklessly and wantonly, and with deliberate indifference,  exposed to the injuries and damages and harm by said Defendants as alleged in the First and Second causes of action Cause of action.

68.    The acts and omissions constituting this cause of action were purposeful, malicious, and reckless and wanton so as to justify the imposition of punitive damages on these individual Defendants in their respective individual

15

capacity.

## FOURTH  CAUSE OF ACTION

### (*Monell* Claim under 42 U.S.C. Section 1983)

### (*Each Plaintiff As Against DEFENDANT CITY OF INGLEWOOD*)

69.    Except as to the punitive damages allegations, Plaintiffs hereby reallege and incorporate by this reference the allegations contained in all paragraphs above as though fully set forth herein.

70.    At all times relevant herein, DOE Defendants 8 through 10, inclusive were supervisors and/or policy makers for the City of Inglewood Police Department which, through gross negligence and in indifference to the Constitutional rights of citizens, employed, maintained and permitted an official policy and custom of permitting, allowing, ratifying and condoning the occurrence of the types of wrongs and misconducts set forth herein. Said misconduct was encouraged, tolerated and condoned by said defendants.

71.    On the date of Plaintiffs' shooting and arrest and false reporting as alleged above, Police Officer Defendants, acting within the course and scope of their duties as peace officers of the City of Inglewood, deprived each Plaintiff of his rights to be free from unreasonable seizures and unlawful arrests as delineated herein above, and thereafter in violation of each Plaintiff's due process rights, proceeded to falsify, fabricate, conceal and alter evidence, submit false police reports, coerce and intimidate witnesses so that  Plaintiffs would be found guilty of the false charges.

72.    Said policies, procedures, customs and practices also called for the City of Inglewood and its Police Department not to discipline, prosecute, or objectively and/or independently investigate or in any other way, deal with or respond to known incidents and complaints of false arrests, falsification of evidence, the preparation of false police reports to justify such wrongful conduct, to cover-up and conceal such wrongful conduct by IPD and for the CITY

Inglewood to fail to objectively and/or independently investigate or in any other way, deal with or respond to or the related claims and lawsuits made as a result of such false arrests and related misconduct.

73.    Said policies, procedures, customs and practices called for and led to the refusal of said Defendant City of Inglewood to investigate complaints of previous incidents of false and unlawful arrests, the filing of false police reports to conceal such misconduct, the falsification evidence and perjury and, instead, officially claim that such incidents were justified and proper.

74.    Said policies, procedures, customs and practices called for said Defendants, by means of inaction and cover-up, to encourage an atmosphere of lawlessness within the IPD and to encourage their police officers to believe that improper arrest of residents of Inglewood or persons present therein, including members of minority groups, the planting of evidence, the submission of false police reports, and the commission of perjury was permissible and to believe that unlawful acts of falsification of evidence and perjury would be overlooked without discipline or other official ramifications.

75.    Said policies, procedures, customs and practices of said Defendant CITY has evidenced a deliberate indifference to the violations of the constitutional rights of Plaintiffs.  This indifference was manifested by the failure to change, correct, revoke, or rescind said policies, procedures, customs and practices in light of prior knowledge by said Defendants and their subordinate policymakers of indistinguishably similar incidents of unjustified and unreasonable and unlawful arrests, falsification of evidence, evidence tampering, submission of false police reports and perjury.

76.    Deliberate indifference to the civil rights of minority groups and other victims of the CITY's Police Department, unlawful arrests, falsified evidence, false and misleading police reports and false and perjurious testimony was also evidenced by said Defendants by their ignoring of the history and pattern of prior

COMPLAINT FOR DAMAGES

1  civil lawsuits alleging civil rights violations, similar to those alleged herein, arising

2  from such misconduct and the related payment of judgments to such individuals.

3      77.    Plaintiffs are informed and believe and therein allege that these

4  customs and practices and policies were the moving force behind the violations of

5  Plaintiffs' respective rights. Based upon the principles set forth in *Monell v. New*

6  *York Dept. Of Social Services*, the City of Inglewood is liable for all of the injuries

7  and damages sustained by Plaintiff as set forth above.

8  **FIFTH CAUSE OF ACTION**

9  **FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

10 ***(Each Plaintiff As Against POLICE OFFICER DEFENDANTS,***

11 ***THE CITY OF INGLEWOOD and DOE DEFENDANTS 1-7)***

12     78.    Plaintiffs hereby reallege and incorporate by this reference the

13 allegations contained in all paragraphs above as though fully set forth herein.

14     79.    Said Defendants' conduct in unlawfully and unjustifiably shooting

15 Plaintiffs and subsequently arresting Plaintiffs with no probable cause to believe

16 they had committed any crime, planting evidence, falsifying reports, all as alleged,

17 was outrageous and exceeded the bounds of conduct usually tolerated in this

18 society.  Defendant City of Inglewood is liable under the principles of *respondeat*

19 *superior* for the aforementioned acts of Defendant Police Officers pursuant to

20 California Government Code Section 815.2.

21     80.    Said Defendants, in engaging in the aforementioned conduct intended

22 to cause Plaintiffs emotional distress and/or acted with reckless disregard of the

23 probability that Plaintiffs would suffer emotional distress, knowing that each

24 Plaintiff was present when the conduct occurred.

25     81.    Said Defendants' conduct was a substantial factor in causing each

26 Plaintiff to suffer and to continue to suffer from severe emotional distress, mental

27 pain, anguish, embarrassment, humiliation, and psychological disturbance.  Each

28 Plaintiff has suffered special and general damages as a result of the emotional

18

distress, mental pain, anguish, embarrassment, humiliation and psychological disturbance in an amount according to proof at trial in excess of this Court's jurisdiction.

82.     The aforementioned acts of said individual defendants were willful, wanton, malicious, and oppressive, thereby justifying the awarding of exemplary and punitive damages as to said Defendants.

## SIXTH CAUSE OF ACTION
## FOR BATTERY
*(Each Plaintiff As Against Defendant BOLLIGER*
*and THE CITY OF INGLEWOOD)*

83.     Plaintiffs hereby reallege and incorporate by this reference the allegations contained in all paragraphs above as though fully set forth herein.

84.     In unjustifiably and unlawfully shooting Plaintiffs,  Defendant Bolliger touched Plaintiffs with the intent to harm or offend each Plaintiff, or touched Plaintiffs with a willful disregard of the rights of each Plaintiff.  Neither Plaintiff consented to this harmful and offensive touching. Defendant City of Inglewood is liable in *respondeat superior* for the aforementioned acts of Defendant Police Officers pursuant to California Government Code Section 815.2.

85.     As a direct and proximate result of said Defendant's conduct Plaintiffs suffered serious, permanent and debilitating physical, neurological, psychological and psychiatric injuries, which have forced him to seek treatment from hospitals, physicians, surgeons, and other medical professionals.

86.     The aforementioned acts of said individual defendant were willful, wanton, malicious, and oppressive, thereby justifying the awarding of exemplary and punitive damages as to said individual Defendant.

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

### SEVENTH CAUSE OF ACTION
### FOR FALSE ARREST/IMPRISONMENT
***(Each Plaintiff Against POLICE OFFICER DEFENDANTS,***
***DOES 1-7 and THE CITY OF INGLEWOOD)***

87.    Plaintiffs hereby reallege and incorporate by this reference the allegations contained in all paragraphs above as though fully set forth herein.

88.    As alleged, in addition to being unlawfully and unjustifiably shot, Plaintiffs were subsequently arrested by Defendant Police Officers, and were then held captive and falsely imprisoned.

89.    As set forth herein, Plaintiffs' arrests were unlawful in that there was no reasonable suspicion or probable cause to arrest either Plaintiff but rather the basis of each arrest as alleged, was the result of the wrongful and illegal conduct of said Defendants.  Defendant City of Inglewood is liable under the principles of *respondeat superior* for the aforementioned acts of said defendant police officers pursuant to California Government Code Section 815.2.

90.    Defendants' conduct was a substantial factor in causing each Plaintiff to suffer harm in that each Plaintiff incurred severe emotional distress, mental pain, anguish, embarrassment, humiliation, and psychological disturbance. Each Plaintiff has suffered special and general damages as a result of the emotional distress, mental pain, anguish, embarrassment, humiliation and psychological disturbance in an amount according to proof at trial.

91.    The aforementioned acts of said individual defendants were willful, wanton, malicious, and oppressive, thereby justifying the awarding of exemplary and punitive damages as to said individual Defendants.

/ / /

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES

## EIGHTH CAUSE OF ACTION

## FOR NEGLIGENCE

### *(Each Plaintiff As Against DEFENDANT BOLLIGER*

### *and THE CITY OF INGLEWOOD)*

92.     Except as to allegations of intentional conduct, Plaintiffs hereby reallege and incorporate by this reference the allegations contained in all paragraphs above as though fully set forth herein.

93.     As a police officer, said defendant owed Plaintiffs a duty of reasonable care in the performance of his duties.

94.     Defendant breached his reasonable duty of care toward Plaintiffs by unlawfully and unjustifiably shooting Plaintiffs and subsequently arresting them. Defendant City of Inglewood is liable in *respondeat superior* for the aforementioned acts of Defendant Bolliger pursuant to California Government Code Section 815.2.

95.     Defendant's conduct was a substantial factor in causing each Plaintiff to suffer serious, permanent and debilitating physical, neurological, psychological and psychiatric injuries, which have forced him to seek treatment from hospitals, physicians, surgeons, and other medical professionals. The amount of special damages claimed by each Plaintiff will be sought by each Plaintiff according to proof at the time of trial.

## PRAYER

Wherefore, Plaintiffs, and each of them, pray for judgment against each defendant as follows:

1.     For compensatory and general damages, past, present and future, and for emotional and psychological pain and suffering, distress and injury in an amount according to proof and in excess of this court's jurisdiction;

2.     For punitive or exemplary damages where alleged against the individual defendants only and not as to the City of Inglewood;

COMPLAINT FOR DAMAGES

3.    For legal interest on the judgment;

4.    For attorneys' fees where provided by statute;

5.    For costs of the suit incurred herein; and

6.    For such other and further relief as the Court may deem just and proper.

Dated: December 4, 2014            **BOUCHER, LLP**

By: _____

Raymond Boucher, Esq.
Hermez Moreno, Esq.
Brian M. Bush, Esq.

**FELDMAN & WALLACH**
Jason Feldman, Esq.
Ian Wallach, Esq.

*Attorneys for Plaintiffs*

22

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiffs Robert Pickett and Darryl Lewis respectfully request that the

3  present matter be set for a jury trial.

4

5  Dated: December 4, 2014                    **BOUCHER, LLP**

6

7                                       By: _____

8                                            Raymond Boucher, Esq.
                                             Hermez Moreno, Esq.
9                                            Brian M. Bush, Esq.

10

11                                           **FELDMAN & WALLACH**
                                             Jason Feldman, Esq.
12                                           Ian Wallach, Esq.

13
                                             *Attorneys for Plaintiffs*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES